IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KATHERINE CANTRELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | CASE NO. 1:03-cv-668-F |
| ) | (WO) |
| ) | (RECOMMENDED FOR PUBLICATION) |
| RUSSELL CURREY AND ROCK- ) | |
| TENN COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**INTRODUCTION**

Plaintiffs Katherine Cantrell, *et al.*, ("Plaintiffs") brought this action in Alabama state court alleging breach of contract and fraud in violation of the laws of Alabama against their former employer, Rock-Tenn Company ("Rock-Tenn"), and one of Rock-Tenn's managers, Russell Currey ("Currey") (collectively "Defendants"). The Defendants removed the case to this Court on the basis of federal question jurisdiction based on the complete preemption of the Plaintiffs' claims by the Employee Retirement Income Security Act of 1974 ("ERISA") and diversity of citizenship. This cause is before the Court on the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. #3). Upon the Court's careful consideration of the motion and the responses thereto, it is hereby ORDERED that:

1. The motion is GRANTED as to the Plaintiffs' breach of contract and fraud claims

that relate in any way to the Severance Agreement.

2. The motion is DENIED as to the Plaintiffs' breach of contract and fraud claims that seek unpaid bonuses and commissions and do not relate to the Severance Agreement.

3. The Plaintiffs shall have the opportunity to amend their complaint to add the appropriate ERISA claims in order to seek benefits under Rock-Tenn's ERISA plan.

## JURISDICTION AND VENUE

This case was removed to this Court by the Defendants from the Circuit Court of Houston County, Alabama pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. The Court finds diversity sufficiently established and an adequate amount of damages sought to satisfy § 1332.[1] The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v.*

---

[1] The Plaintiffs are all residents of Alabama. Defendant Currey is a resident of Georgia, and Defendant Rock-Tenn is incorporated under the laws of Georgia and has its principal place of business in the same. The Plaintiffs' complaint demands $500,000 in compensatory and punitive damages. Additionally, the Defendants have argued that the Court has jurisdiction over this matter through federal question jurisdiction because the Plaintiffs' claims are completely preempted by federal law. Because the Court finds the Plaintiffs' claims subject to complete preemption under ERISA, removal is also proper on this basis. The Plaintiffs have not filed a motion to remand.

*Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

**FACTS AND PROCEDURAL HISTORY**

The Court has carefully considered all affidavits and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

The Plaintiffs were all employed by Rock-Tenn at its Dothan, Alabama plant during the time in which Rock-Tenn entered negotiations to sell the facility to Container Services Corporation ("CSC"). On September 23, 2002, Rock-Tenn closed the deal with CSC that transferred all assets at the Dothan site to CSC. As part of the sales agreement, the parties stipulated that CSC would retain no fewer than five Rock-Tenn employees and would provide them with similar compensation and benefits. The Plaintiffs in this action were the employees chosen to continue working at the facility under its new ownership.

All employees not selected by CSC were eligible for benefits under Rock-Tenn's Severance Agreement. This plan had also been available to employees who lost their jobs in the months leading up to the sale of the plant, as Rock-Tenn had begun scaling back its operations at the facility. The Severance Agreement offered employees severance pay equal to one week's salary for every year the employee had been with the company up to a maximum of thirteen weeks. These amounts would be paid in periodic installments consistent with Rock-Tenn's general pay-period schedule. The plan also provided for the payment of accrued vacation time and the availability of outplacement services. In addition, employees were eligible to continue their medical, dental, and life insurance through COBRA

for up to eighteen months.  As part of the agreement, the employees were required to make extensive waivers of liability to Rock-Tenn and to keep the details and existence of the arrangement confidential.

On September 24, 2002, Rock-Tenn sent Currey[2] to the plant to conduct a meeting with the employees to inform them of the change in ownership.  The accounts of what was said at this meeting vary; however, the parties do agree that Currey discussed the provisions of Rock-Tenn's Severance Agreement.  According to the Plaintiffs, Currey stated that *all* employees who had been with Rock-Tenn for more than a year would receive benefits under the plan.  To them, this statement encompassed those who would be left without a job as well as those hired by CSC.  Currey also allegedly negotiated several oral arrangements with the Plaintiffs to induce them to remain employed at the facility in order to sell Rock-Tenn's remaining inventory.[3]  Specifically, Plaintiff James Barnes avers Currey promised him a commission and additional bonuses provided Barnes would stay on the job as long as necessary to move the remaining inventory.[4]  These agreements were purportedly discussed before the Plaintiffs learned they would be offered positions with CSC.

---

[2] Currey is the executive vice president and general manager of the corrugated packaging division of Rock-Tenn.  The general manager of the Dothan facility reported directly to Currey, whose office is located in Atlanta.

[3] According to the Plaintiffs' affidavit, they were offered severance pay in exchange for remaining with the company through the transition and for selling the remaining inventory.

[4] Although several of the Plaintiffs allege that Currey induced them to remain with Rock-Tenn, the agreement with Barnes is the only arrangement that appears to have taken place outside of the general discussions Currey held about the Severance Agreement.

Subsequent to these discussions, all Plaintiffs were hired by CSC and continued work without interruption. The Plaintiffs contend that after the ownership transition, they sold all the remaining Rock-Tenn inventory over the course of the next eight months. It is unclear whether the tasks related to the Rock-Tenn inventory were part of the Plaintiffs new duties with CSC, but the Plaintiffs allege that they did so as part of the arrangement with Currey. At CSC, the Plaintiffs were given time of service credit, did not suffer any interruption in compensation, and did not experience any significant change in their conditions of employment.

On May 16, 2003, the Plaintiffs brought this breach of contract and fraud suit seeking (1) severance pay in accordance with the alleged oral agreements the Plaintiffs reached with Currey, (2) unpaid bonuses, and (3) in the case of James Barnes, unpaid commissions. The Defendants removed the case to this Court on June 26, 2003.

## DISCUSSION

The resolution of the pending motion requires the Court to address four primary issues:

1. Did Rock-Tenn's Severance Agreement constitute an "employee welfare benefit plan" as defined by ERISA?

2. Does ERISA preempt the Plaintiffs' state-law claims of breach of contract and fraud?

3. Have the Plaintiffs exhausted their administrative remedies and can the Plaintiffs

amend their complaint to add ERISA claims?

    4. Are there any claims that are beyond the scope of ERISA?

**A. ERISA Plan**

The initial question before the Court is whether the Rock-Tenn Severance Agreement constitutes an "employee welfare benefit plan" under ERISA. Under the statute an "employee welfare benefit plan" is defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). The Eleventh Circuit has separated this language into five distinct requirements necessary to satisfy the statutory definition. The Court of Appeals defines an ERISA plan as (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization or both, (4) to provide beneficiaries, (5) with severance benefits. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214 (11th Cir. 1999); *see also Kirkland v. SSL Americas, Inc.*, 263 F. Supp. 2d 1326, 1334 (M.D. Ala. 2003).

In this case, the Court will examine these five elements to determine if Rock-Tenn's

7

Severance Agreement represents an "employee welfare benefits plan." While the first two prongs necessitate a closer analysis, elements 3, 4, and 5 appear clearly established. The Severance Agreement was created by Rock-Tenn, an employer. And the plan was meant to benefit employees who would be left unemployed by providing severance benefits. *See Butero*, 174 F.3d at 1212.

1. *Plan, Fund, or Program*

To qualify as a plan, fund, or program, ERISA does not necessarily require a formal written arrangement. *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982). Instead, the Court must determine whether "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id*. at 1373.

Turning first to the intended benefits, the Severance Agreement provides a straightforward inventory of the benefits terminated employees would receive. The package included severance pay of one week's salary for every year of service for up to thirteen weeks. The company also paid all accrued vacation time through the employee's termination date and made available outplacement services. Additionally, Rock-Tenn furnished access to its health and life insurance plans through the COBRA system. Overall, the Severance Agreement delineated unmistakably clear intended benefits that a reasonable employee would have no difficulty deciphering.

Next, the *Donovan* test requires an examination of whether a reasonable employee

could discern the class of intended beneficiaries. Here, the Severance Agreement does not explicitly state which employees would be eligible for the benefits provided therein. However, it is not beyond the Court's authority to ascertain this information from the record. *See Hollingshead v. Burford Equip. Co.*, 747 F. Supp. 1421, 1428 (M.D. Ala. 1990). Indeed, the parties have stipulated that employees terminated by Rock-Tenn generally received entitlements under the agreement.[5] Considering the consistent approach taken by Rock-Tenn to provide terminated employees with severance benefits, the Court finds a reasonable employee could determine the class of intended recipients.

The third element in this analysis is not difficult to surmount. It is clear that Rock-Tenn would be the source of financing for any severance benefits under the agreement. In fact, a reasonable person would be challenged to come up with any alternative provider of funds.

Finally, a reasonable employee must be able to determine the procedures for applying for and receiving benefits. Again, this question is not resolved by the express terms of the Severance Agreement. Similar to the agreement in *Kirkland*, the plan here does not "explain[] what an employee must do to apply for and receive benefits." 263 F. Supp. 2d at 1336. Such a finding does not necessitate a failure of the fourth element of the test; instead, the Court must focus its analysis on the Plaintiffs' "knowledge, whether actual or imputed,

---

[5] While the Plaintiffs seek severance benefits as part of an allegedly separate arrangement with Currey, they do not challenge the notion that all other eligible employees were provided benefits under the Severance Agreement.

9

about [Rock-Tenn's] administrative claims process." *Id*. Many courts faced with similar situations have found a reasonable employee could ascertain the procedure for receipt of benefits where informal procedures are in place or where the experiences of previously terminated employees made the process apparent. *See, e.g.*, *Deibler v. United Food & Comm'l Workers Local Union 23*, 973 F.2d 206, 210 (3d Cir. 1992) ("It is true that the source of financing and the procedure for receiving benefits were never made explicit, but it is enough if these can be ascertained from the 'surrounding circumstances.'") (citing *Donovan*, 688 F.2d at 1373); *Kirkland*, 263 F. Supp. 2d at 1339-40 (finding compliance with *Donovan* in the absence of formal procedures); *Petersen v. E. F. Johnson Co.*, 2002 WL 1975907, at *2 (D. Minn. Aug. 23, 2002) ("[W]hile the Program does not explicitly contain procedures for receiving benefits, a reasonable person could ascertain the informal procedures to follow."); *Whitfield v. Torch Oper. Co.*, 935 F. Supp. 822, 828 (E.D. La. 1996) (finding the fourth prong of *Donovan* satisfied when "the source of financing and procedures for receiving benefits are also gleaned from the prior terminations"). Taking account of the surrounding circumstances, a reasonable employee could have discerned how to apply for and receive benefits. This finding is evidenced by the numerous employees who obtained their entitlements before and after the sale of the Rock-Tenn facility.

As the Severance Agreement satisfied all the requirements of *Donovan*, the Court has determined that it is a "plan, fund, or program" within the meaning of § 1002(1).

2. *Established or Maintained*

An ERISA plan must also be "established or maintained." *Butero*, 174 F.3d at 1214. "A plan is established when there has been some degree of implementation by the employer beyond a mere intent to confer a benefit." *Id*. "Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision [to establish a plan] has become a reality." *Donovan*, 688 F.2d at 1373. Here, Rock-Tenn has met this requirement by providing benefits to all employees left without employment in the force reduction at the Dothan plant. "This payment of benefits under its severance policies is evidence that [Rock-Tenn] took steps to 'establish' the procedures beyond simply announcing its intention, in writing, to provide severance benefits." *Kirkland*, 263 F. Supp. 2d at 1340.

Having met all the *Butero* elements, the Court concludes that the Severance Agreement constitutes an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1). This finding compares favorably with the results reached in numerous other similar cases. *See, e.g.*, *Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) ("[P]lans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of [ERISA].") (citation omitted and emphasis in the original); *Bedinghaus v. Modern Graphics Arts*, 15 F.3d 1027 (11th Cir. 1994) (finding severance plan subject to ERISA); *Holland v. Burlington Inds., Inc.*, 772 F.2d 1140, 1146 (4th Cir. 1985), *aff'd sub nom. Brooks v. Burlington Inds., Inc.*, 477 U.S. 901 (1986) (mem.) (noting "Congress determined as a matter of policy that severance pay benefits should be

subject to ERISA" and upholding employer's decision to refuse severance pay to former employees that had taken positions with the employer's successor at a facility); *Kirkland*, 263 F. Supp. 2d at 1341. Because the Court has determined that Rock-Tenn has an ERISA plan in place, it is essential to ascertain whether the state-law claims of the Plaintiffs are preempted by federal law.

**B. Preemption**

Cases involving ERISA often require an analysis of two types of preemption—complete, or "super-preemption," and defensive preemption. *Butero*, 174 F.2d at 1211; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). In *Taylor*, the Supreme Court acknowledged as "long settled law" the notion that a cause of action arises under federal law for the purposes of federal jurisdiction under 28 U.S.C. §§ 1331 and 1441 "only when the plaintiff's well-pleaded complaint raises issues of federal law." *Id.* at 63 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Despite this recognition, the Court went on to state that "[o]ne corollary of the well-pleaded complaint rule . . . is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63 (citing *Avco Corp. v. Machinists*, 390 U.S. 557 (1968)).

Thus, complete or "[s]uper-preemption arises from Congress's creation of a comprehensive remedial scheme in [ERISA] 29 U.S.C. § 1132 for loss or denial of employee benefits." *Butero*, 174 F.3d 1207, 1211 (11th Cir. 1999). In these situations, complete

preemption gives federal courts subject matter jurisdiction over state-law claims that would ordinarily be beyond their reach. The preemted state-law claims are converted into federal claims, and the defendant is allowed to remove the case to federal court. *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

Also at issue is defensive preemption, which originates in ERISA's express preemption provision, 29 U.S.C. § 1144(a). Defensive preemption provides an affirmative defense to state-law claims but does not furnish an independent basis for federal subject matter jurisdiction. Thus, in the absence of complete preemption, a defendant must rely on the state court to dismiss claims that are preempted by federal law. *Butero*, 174 F. 3d at 1212. Nonetheless, "[i]f the plaintiff's claims are super-preempted, then they are also defensively preempted and must be dismissed." *Id*. at 1215.

Regardless of the merits of the Plaintiffs' claims, complete preemption will apply and federal courts will have jurisdiction when (1) there is a relevant ERISA plan, (2) the plaintiff has standing to sue, (3) the defendant is an ERISA entity, and (4) the complaint seeks compensatory relief. *Butero*, 174 F.3d at 1212. The final three elements are all clearly present in this case. The Plaintiffs have standing to sue as employees of Rock-Tenn seeking compensatory relief. Also, as discussed above, the Severance Agreement is an ERISA plan, and as its proprietor, Rock-Tenn, is an ERISA entity.

As a result, the essential question is whether the Plaintiffs' claims implicate Rock-Tenn's ERISA plan. The Plaintiffs resist this classification and dispute the placement of

their claims within the scope of ERISA. They argue that unlike their colleagues from Rock-Tenn who received severance benefits upon termination, Rock-Tenn owes the benefits to the Plaintiffs for their continued service after the facility was sold to CSC. Under this approach, the Plaintiffs are entitled to payment not as part of the Severance Agreement but as compensation for their efforts in moving Rock-Tenn's remaining inventory in accordance with the purported oral arrangements made with Currey.

To support their contentions, the Plaintiffs offer *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). *Fort Halifax* involved a Maine statute that required a one-time severance payment to employees in the event of a plant closing. Upon examination, the Supreme Court concluded that the absence of an ongoing administrative structure for employers meant that ERISA was not implicated by the Maine statute. *Id*. at 14. In subsequent cases, lower courts have interpreted this ruling to exclude such one-time payments from the purview of ERISA. *See James v. Fleet/Norstar Fin. Grp., Inc.*, 992 F.2d 463 (2d Cir. 1993); *Angst v. Mack Truck, Inc.*, 969 F.2d 1530 (3d Cir. 1992); *Wells v. Gen. Motors Corp.*, 881 F.2d 166 (5th Cir. 1989). The Plaintiffs argue that their arrangement with Currey and Rock-Tenn would provide a similar one-time benefit and is thus outside ERISA's scope.

This characterization seeks to avoid the reach of 29 U.S.C. § 1144(a), which provides "the provisions of this subchapter [ERISA] . . . shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court has interpreted this language very broadly: "The breadth of [§ 1144(a)'s] preemptive reach is

14

apparent from that sections language. A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983); *see also Jackson v. Martin Marietta Corp.*, 805 F.2d 1498, 1499 (11th Cir. 1986) ("The preemption provisions of ERISA are to be given a broad construction."). Thus, "preemption defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan." *Butero*, 174 F.3d at 1215.

While not all state laws that impact employee benefit plans are preempted, the breadth of the preemption clause and ERISA's broad remedial purpose leave few such state-law actions beyond § 1144(a)'s scope. *Jackson*, 805 F.2d at 1499. The statute's preemption clause is not "interpreted to preempt only state laws dealing with the subject matter covered by ERISA." *Shaw*, 463 U.S. at 98. "Instead, ERISA's preemption of state law claims depends on the conduct to which such law is applied, not on the form or label of the law. The courts have indicated that 'even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.'" *Cefalu v. B. F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989) (quoting *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir. 1985)).

Here, the alleged contracts for severance pay would have provided the Plaintiffs with benefits equivalent to those found in the Severance Agreement. Indeed, the calculation of the payment amounts would have been derived directly from the formula provided in Rock-Tenn's severance plan. Viewed in this light, the Plaintiffs' claims appear to contend nothing

15

more than that they were improperly excluded from the group of employees eligible to receive benefits under the Severance Agreement. The only relevant difference between the Plaintiffs and employees who received benefits would be the source of the Plaintiffs' right to the benefits—the purported oral contracts with Currey as opposed to the terms of the Severance Agreement. This consideration goes to the merits of the Plaintiffs' claims and is of no consequence when deciding whether the claims relate to ERISA. *See Cefalu*, 871 F.2d 1290. As such, the scope of ERISA's preemptive force is sufficiently broad to encompass and preempt these claims because they directly impact and relate to Rock-Tenn's ERISA plan.

The Plaintiffs also attempt to avoid the preclusive effect of ERISA by comparing the Severance Agreement to the lump-sum payments found beyond ERISA's reach in the *Fort Halifax* line of cases. This reliance is misplaced because the Severance Agreement distributed the severance payments to employees in accordance with Rock-Tenn's regular pay-period schedule and maintained an administrative system for the provision of other benefits to eligible employees. Such a structure belies any notion that Rock-Tenn's plan was merely a "one-time lump-sum payment triggered by a single event." *Fort Halifax*, 482 U.S. at 12. The Severance Agreement instead constitutes "a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." *Id*. at 11.

Therefore, the Court concludes that any claims asserted by the Plaintiffs that use the

Severance Agreement as a point of reference necessarily "relate to" the plan. This conclusion is important because claims that are completely preempted are also defensively preempted. *Butero*, 174 F.3d at 1215. "Defensive preemption defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan." *Id*. Thus, the Plaintiffs' claims of breach of contract and fraud that seek severance pay relate to the Severance Agreement must be dismissed.

This result is consistent with the Fifth Circuit's opinion in *Cefalu*. In that case, the plaintiff sought damages against his former employer for allegedly breaching an oral contract to provide him pension benefits. The plaintiff, who was otherwise ineligible for benefits, claimed he was entitled to them due to an oral contract he entered with his employer and that his claim was not within the scope of ERISA as he sought damages from the employer rather than the plan. However, the court disagreed and found that his suit did relate to the defendant's ERISA plan and was preempted because the computation of damages would refer to the ERISA plan's provisions.[6] *Cefalu*, 871 F.2d at 1294-95. Many other courts have reached similar conclusions where state-law breach of contract and fraud claims implicate an ERISA plan. *See, e.g.*, *Pilot Pen Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (finding

---

[6] The *Cefalu* court also held that an ERISA plan could not be orally modified. 871 F.2d at 1297; *see also Alday v. Container Corp. of Amer.*, 906 F.2d 660, 665 (11th Cir. 1990) (finding oral statements cannot modify an ERISA plan). The Plaintiffs here similarly rely on the alleged oral assertions of Currey to found their claims. The Court's opinion dispenses with the state-law claims arising from these statements, however, because the parties have not yet directly addressed the issue of whether the Plaintiffs are eligible for any benefits under the Severance Agreement as ERISA claimants, the Court does not find it necessary to confront the issue of whether Currey's alleged statements could have adapted the Severance Agreement.

state-law bad faith, breach of contract, and fraud actions preempted); *Kidneigh v. UNUM Life Ins. Co. of Amer.*, 345 F.3d 1182 (10th Cir. 2003) (finding conflict between state-law bad faith claim and ERISA's remedial purpose necessitated preemption); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (finding state-law claims including breach of contract and emotional distress preempted).

Likewise, the Plaintiffs here seek nearly identical relief in the form of severance pay that is derived from the formula put forth in Rock-Tenn's Severance Agreement. As did the plaintiff in *Cefalu*, Plaintiffs here contend that an oral agreement was reached with management that entitles them to ERISA benefits as a matter of contract. This contention directly implicates the Severance Agreement. Consequently, the Plaintiffs' breach of contract and fraud claims relate to the Severance Agreement "in the broad commonsense meaning of the phrase and are preempted by ERISA" *Kirkland*, 263 F. Supp. 2d at 1348 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (citations and internal quotations omitted).

## C. Administrative Exhaustion

Once a court has determined that state-law claims are preempted by ERISA, the future of the Plaintiffs' action depends on whether they have exhausted their administrative remedies prior to bringing suit.[7] Before bringing an ERISA suit, a plaintiff must exhaust the

---

[7] In previous cases in this District, the Court has either allowed plaintiffs to amend their complaint or considered administrative exhaustion prior to allowing such amendment. *See Kirkland*; 263 F. Supp. 2d at 1348; *Hardy v. Welch*, 135 F. Supp. 2d 1171, 1185 (M.D. Ala. 2000). Thus, the Court will analyze administrative exhaustion to determine if the Plaintiffs

plan's administrative remedies. *Springer v. Wal-Mart Assocs. Grp. Heath Plan*, 908 F.2d 897, 899 (11th Cir. 1990). In the Eleventh Circuit, "a district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate . . . or where a claimant is denied meaningful access to the administrative review scheme in place." *Perrino v. So. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (internal quotes and citations omitted).

While it is undisputed that the Plaintiffs have not filed an administrative claim with Rock-Tenn, the Court does not have sufficient facts before it to determine if administrative exhaustion has been accomplished or should be excused in this case. The Severance Agreement does not spell out any specific method for applying for benefits, and the Plaintiffs have not addressed this issue in their complaint. Thus, the Plaintiffs should be allowed the opportunity to amend their complaint to state a cause of action under ERISA and to demonstrate whether administrative exhaustion has been achieved or is necessary.

**D. Remaining Claims**

Because the Court has concluded ERISA preempts all the Plaintiffs' claims that relate to the Severance Agreement, these claims must be dismissed. This determination requires all claims that seek severance pay to be dismissed with prejudice. The Plaintiffs shall be permitted thirty days leave to amend their complaint to recharacterize these claims under ERISA and to demonstrate that all administrative remedies have been exhausted or are

---

should be permitted to amend their complaint to add ERISA claims.

excused. The Plaintiffs' complaint also contains state-law claims that do not relate to the Severance Agreement or ERISA and are therefore not preempted. These claims seeking unpaid bonuses and commissions will subsist whether the Plaintiffs amend their complaint or not.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. # 4) is partially GRANTED and partially DENIED. In accordance with this ruling it is hereby ORDERED as follows:

1. The motion is GRANTED as to the Plaintiffs' breach of contract and fraud claims that relate in any way to the Severance Agreement. Most notably, this includes the Plaintiffs' claims for severance pay. These actions are DISMISSED WITH PREJUDICE.

2. The motion is DENIED as to the Plaintiffs' breach of contract and fraud claims that seek unpaid bonuses and, in the case of Barnes, commissions that do not relate to the Severance Agreement.

3. The Plaintiffs shall have thirty days to amend their complaint to add the appropriate ERISA claims in order to seek benefits under Rock-Tenn's ERISA plan.

DONE this 8th day of December, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE